## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

TAYLOR N LAVERGNE                          CASE NO.  2:21-CV-04236

VERSUS                                     JUDGE JAMES D. CAIN, JR.

HYUNDAI MOTOR CO ET AL                     MAGISTRATE JUDGE LEBLANC

## MEMORANDUM ORDER

Before the Court is a "Hyundai Motor Company and Hyundai Motor America's Motion in Limine to Exclude Evidence on Experts Herbst and Kennett's Rear Impact Testing and Alternative Design" (Doc. 65). Defendant moves to exclude as irrelevant the rear impact testing conducted by Plaintiff's experts Brian Herbst and Kelly Kennett (the "Herbst/Kennett test) because of alleged material differences that exist between the Herbst/Kennett test and the conditions of the subject crash. Defendants also move to exclude any evidence of Herbst's alternative design.

## BACKGROUND

This lawsuit involves a rear-end collision that occurred December 19, 2019. Plaintiff was seated in the rear seat of a 2016 Hyundai Accent behind the driver when the vehicle was rear-ended by a modified 2013 Jeep Wrangler. At time of the accident, Plaintiff was seated in the left rear seat; she was not wearing a seatbelt. The right front wheel of the Jeep drove over the rear bumper and into the trunk of the Hyundai during the accident.[1]

---

[1] Defendants' exhibit 1, Kelly Kennett deposition, pp. 53:23-54:14.

The collision caused the rear seatback to push forward causing Plaintiff to be thrown face-first into the back side of the driver's seat.

The lawsuit was initially filed in state court on December 17, 2020, against the driver of the Jeep Wrangler and her insurer alleging negligence; the lawsuit also included Hyundai alleging violations of the Louisiana Products Liability Act ("LPLA").[2] The suit between Plaintiff, the driver and the driver's insurance carrier as to the negligence claims was resolved. Shortly thereafter, Hyundai removed the remainder of the case involving the LPLA to this Court.

## LAW AND ANALYSIS

Plaintiff alleges that "[t]he rear end structural components of the 2016 Hyundai Accent failed to maintain the integrity of Plaintiff's occupant compartment (i.e., her survival space)" during the rear-end collision.[3] Defendants remark that it anticipates that Plaintiff will attempt to offer evidence of testing results generated by experts Herbst and Kennett's accident recreation (the Herbst/Kennett test) and the feasibility of reasonable alternative designs.

Defendants move to exclude arguments and evidence regarding the Herbst/ Kennett test because their crash test allegedly had meaningful differences from the actual accident, including that it: (1) was conducted with a straight rear impact, not an angular approach; (2) did not reflect the height differences and weight of the Wrangler given the Wrangler's modifications; (3) employed different tires with distinctions in both tire and wheel size;

---

[2] Doc. 6-1.
[3] Complaint, ¶ 14.

and (4) the test did not replicate the weight of the driver in the test Hyundai. Defendants argue that these differences altered the engagement of the vehicles to reduce the tendency of the Jeep to override the Hyundai.

Defendants also seek to exclude Herbst's alternative design because it allegedly fails to demonstrate that another way to design the product existed.

*Was the Herbst/Kennett test substantially similar?*

Federal Rule of Evidence 401 defines "'[r]elevant evidence' ... [as] evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. Rule 403 provides that: [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Federal Rule of Evidence 403. Therefore, under Rule 403, the Court must exclude evidence that would have a disproportionate danger of confusing the issues or misleading the jury.

"As a general rule, the district court has wide discretion to admit evidence of experiments conducted under substantially similar conditions. However, the burden is upon the party offering evidence of out-of-court experiments to lay a proper foundation demonstrating a similarity of circumstances and conditions." *Barnes v. Gen. Motors Corp.,* 547 F.2d 275, 277 (5th Cir. 1977). (internal citations omitted). For evidence of experimental testing to be admissible, "it is not required that all the conditions shall be

precisely reproduced, but they must be so nearly the same in substantial particulars as to afford a fair comparison in respect to the particular issue to which the test is directed." *Id.*

The Herbst report and deposition is purported to show that the Herbst/Kennett test was designed to be performed under conditions substantially similar to the conditions of the subject crash, while at the same time using a structurally modified Hyundai to demonstrate the effect such modifications would have had in maintaining the integrity of the rear seat occupant space had they been employed in the subject crash. Herbst opines that his proposed alternative design "can result in a dramatic reduction of crush under similar conditions to the Lavergne accident," and "[i]f this reinforcement methodology had been applied to the Lavergne vehicle, a similar reduction of rear intrusion could have been achieved.[4]

Defendants remark that Herbst purportedly tested an "alternate design 2012 Hyundai Accent" that was "reinforced . . . using internal steel and structural void filling modifications."[5] Herbst explains that the exemplar 2012 Hyundai Accent "was subjected to a 30mph 70% left hand offset rear impact by a 2017 Jeep Wrangler, similar to that involved in the Lavergne accident."[6] Herbst additionally opines that "[t]he methodology employed in the reinforced test was similar to that experienced in the accident," and "[t]he reinforced test vehicle experienced similar impact conditions as the accident vehicle did,"

---

[4] Defendant's exhibit 2, Herbst report, p. 16.
[5] *Id.* p. 14.
[6] *Id.* p. 15.

and therefore, the impact conditions of Plaintiff's Rear Impact Test "are directly comparable to the accident vehicle."[7]

Defendants challenge the Herbst/Kennett test and subsequent opinions of Plaintiff's experts, Herbst and Kennett.  Defendants argue that this evidence is not relevant because Plaintiff's rear impact was not representative of the subject collision.  Defendant relies on its own expert, Geoffrey Germane, Ph.D. who opined that "[t]he plaintiff's crash test was not representative of the subject crash and was significantly less severe based on the combined crush energy of the collision."[8] Plaintiffs challenge Germane's supplemental report, which is subject to Plaintiff's motion in limine due to its untimeliness and note that Germane's criticism is found in this untimely supplemental report.  Thus, Plaintiff requests that the Court not consider Germane's supplemental opinion/report that criticizes the Herbst/Kennett test.

However, Plaintiff asserts that if the Court allows the untimely supplemental report, Germane's untimely opinions fail as a basis for exclusion. Specifically, Germane noted that the test Jeep Wrangler weighed over 300 pounds less because of wheel and tire size differences, and was at least 1.7 inches lower than the subject crash Jeep Wrangler.[9] Additionally, "[t]he 2012 Hyundai was in line with the Jeep rather than oriented at a 4 deg. clockwise angle."[10] In addition to the different weight, height, and approaching angle of the colliding vehicle, Herbst testified that Plaintiff's Rear Impact Test also did not attempt

---

[7] Id.
[8] Defendant's exhibit 5, October 30, 2025, Germane Supplemental Report, p. 4.
[9] Id.
[10] Id.

to replicate the weight of the driver in the accident vehicle.[11] Defendant contends that each

of these differences "altered the engagement of the vehicles to reduce the tendency of the

Jeep to override the Hyundai."[12]

Defendants remark that Plaintiff's expert, Kennett, testified that "obviously the

crash test is not replicating this accident."[13] Defendants assert that Plaintiff's other expert,

Herbst, relied on the test as the basis for his opinion that an alternatively designed rear

structure could dramatically reduce crush and prevent serious occupant injury in a rear

impact crash."[14] Defendant argues that Plaintiff's two experts make contradictory

statements as to whether the test simulates the crash, which would confuse or mislead the

jury. Plaintiff comments that the crash test was not identical to the subject crash because

the test Hyundai crash car was modified to "show[] the potential for improvement with a

modified Hyundai."[15] Thus, there was no disagreement between Plaintiff's experts.

Defendant also argues that Herbst's proposed alternative design is inadmissible

because the design does not demonstrate "that another way to design the product existed"

citing *Underwood v. Gen. Motors, L.L.C.*, 642 F.App'x 468, 471-472 (5th Cir. 2016) (for

a party to prevail on a claim that a product is unreasonably dangerous in design, the plaintiff

must show "that an alternative design could have prevented the claimed damages and that

the alternative design could be feasibly implemented.")

---

[11] Defendant's exhibit 1, Herbst deposition, pp. 63:24-64:10; Defendant's exhibit 5, Germane Supplemental Report, p. 5.
[12] *Id.*
[13] Defendant's exhibit 1, Kennett deposition, p. 53:12-17.
[14] Defendant's exhibit 4, Herbst deposition, p. 14-15.
[15] Plaintiff's exhibit d, attached to Doc. 58, Kennett deposition, p. 53:17-19.

Defendants contend that the demonstration requires that Plaintiff show: (1) that another way to design the product existed; (2) that the alternative design would have been significantly less likely than the chosen design to cause the damage, and (3) that the risk avoided by the alternative design outweighed the burden of its adoption." *Id.*; *Mixon v. Anadarko Petroleum Corp.*, No. CIVA07-1063, 2010 WL 1443901, at *4 (W.D. La. Apr. 9, 2010). "A manufacturer is not an insurer of the product he designs, and it is not required that the design adopted be perfect, or render the product accident proof, or incapable of causing injury, nor is it necessary to incorporate the ultimate safety features in the product." *Syrie v. Knoll Int'l*, 748 F.2d 304, 307 (5th Cir. 1984).

As previously mentioned, Plaintiff first challenges the use of Germane's untimely supplemental report, which is the subject of a motion in limine to exclude the untimely report filed by Plaintiff because it is untimely and would unduly prejudice Plaintiff. Should the Court consider the untimely supplemental report, Plaintiffs argue that (1) the differences in the height and weight of the Jeep used in the Herbst/Kennett test do not justify finding that the test was not substantially similar to the subject crash. Plaintiff also challenges Germane's reliability on the height issue.

In his original report, Germane opined that the subject Jeep was equipped with 20-inch wheels and 35 or 37 inch tires which "alone increased the axle above ground height 2.5-3.75 inches with respect to the original tires and wheels."[16] Plaintiff notes that after learning of Kennett's criticism of Germane's opinion, Germane discovered that he had

---

[16] Geoff Germane Report, p. 3, Doc. 58-11.

based his wheel and tire size calculation on crash site photographs of the wrong Jeep wheel.[17] Germane then recalculated the wheel and tire size to be consistent with Kennett's opinion.[18] Germane used this recalculation to support his opinion that the height of the test Jeep's bumper was at least 1.7 inches lower than the height of the subject Jeep's bumper.[19] As such, Plaintiff contends that Germane's opinion about the height bumper is contradicted by the physical evidence and is incorrect.

Herbst and Kennett expressed in their reports and testified in their depositions as to their opinion that the critical variable which altered the engagement of the vehicles to reduce the tendency of the Jeep to override the Hyundai was the structurally improved rear end of the test Hyundai.[20]

Plaintiff informs the Court that the Herbst/Kennett test fixed the test Jeep's bumper height in accordance with the physical evidence of an unshattered and intact left rear taillight present at the scene of the subject crash. Kennett explained in his report:

> The Jeep's ride height alignment was determined from the subject crash damage wherein the police scene photographs show that the left rear taillight of the Hyundai ends up out of the vehicle and on top of the Jeep's front bumper, see Figure 9. If the Jeep's bumper directly impacts the plastic taillight, the light will of course be obliterated instead of excised. Thus, vertical alignment was set such that the test Jeep's front bumper would impact just below the left rear taillight of the test Hyundai, see Figure 10 and Figure 11. The test resulted in a similar outcome, with the taillight on the Jeep's front bumper, see Figure 12 below.[21]

---

[17] Geoff Germane deposition, p. 128:2-20, Doc. 61.

[18] Germane Supplemental Report, p. 5, Doc. 64-5.

[19] Germane deposition, pp. 40:13-41:3, Doc. 61.

[20] Plaintiff's exhibit B, attached to Doc. 58, Herbst report, p. 16; Plaintiff's exhibit C, attached to Doc. 58, Kennett report, p. 20.

[21] Kennett Report, p. 12, Doc. 58-5; see also Kennett Deposition, p. 48:7-24.

Plaintiff argues that Germane's miscalculation of the test Jeep's bumper height cannot serve as a basis for finding the Herbst/Kennett test was not substantially similar to the subject crash.

Additionally, Plaintiff asserts that Germane failed to support his opinion that the test Jeep was 300 pounds lighter than the subject Jeep. Despite Germane acknowledging that the weight of an unmodified 2013 Jeep Wrangler is 4,277 pounds, he also acknowledged that the weight of the test Jeep was approximately 4,587 pounds, but he did not provide a basis for calculating the weight of the subject Jeep to be approximately 4,887 pounds. Plaintiff notes that in his deposition, Germane attempted to justify the alleged difference by pointing to a difference in wheel and tire size between the test Jeep and the subject Jeep.[22]

As to Germane's criticism of the alignment angle in the crash test versus the actual collision, Plaintiff notes that in Germane's original report he indicated that the subject crash vehicle alignment was off center "likely less than 5 deg."[23] In Germane's allegedly untimely supplemental report, he cites the 4-degree angle alignment to support his conclusion that its effect "was to produce a concentrated initial contact of the right end of the Jeep front bumper with the upper rear bumper cover of the Hyundai Accent at its approximate centerline.[24]

---

[22] Germane deposition, pp. 127:7-128:1, Doc. 61.
[23] Plaintiff's exhibit I, attached to Doc. 58, Germane report, p. 5.
[24] *Id.*

Plaintiff's experts, Herbst and Kennet calculated the alignment angle at 3 degrees,[25] and both experts agree that whether the subject crash angle alignment was 3 degrees, 4 degrees, or 5 degrees, the angle alignment is not a meaningful factor in this case.[26]

Lastly, concerning the absence of a dummy driver in the Herbst/Kennett crash test, Germane opines that the test did not simulate the weight of a driver in the driver's seat. However, Plaintiff points out that in the untimely June and September crash tests by Defendants' experts Germane, Ridenour, and Carhart, not only was there no test dummy in the driver's seat of the test Hyundai, but there was also no front seat in the crash test car.[27] Plaintiff contends that this fact alone highlights the insignificance of this variable.

First, the Court will not rely on the opinions in Germane's supplemental report because that report was untimely.  However, even if the Court did consider that supplemental report, the Court finds that Plaintiff's crash test was substantially similar to the subject crash.  The crash test focused on the defect at issue—the rear end structure of the subject Hyundai Accent--which tested the defect under conditions substantially similar to those present during the subject crash. Defendants will be given ample opportunity to challenge the Herbst/Kennett crash test on cross examination.

*Herbst's alternative design*

Defendant suggests that Herbst's alternative design is fatally flawed because he fails to establish that his alternative design would meet the requirements of Federal Motor

---

[25] Plaintiff's exhibit C, attached to Doc. 58, Kennett report, p. 8.
[26] Plaintiff's exhibit A, attached to Doc. 58, Herbst deposition, p. 63; Plaintiff's exhibit D, attached to Doc. 58, Kennett deposition, p. 53:8-19.
[27] Plaintiff's exhibit L, Doc. 61, Germane Deposition, p. 82:12-15.

Vehicle Safety Standard ("FMVSS") No. 301-R.[28] *Id.* Furthermore, Herbst conceded that the subject 2016 Hyundai Accent passed all federal standards.[29] Lastly, Defendant suggests that Herbst failed to establish that his alternative design was designed, evaluated, or tested to establish compliance with FMVSS 301-R, despite Herbst admitting that adherence to FMVSS 301-R is a prerequisite to marketing and selling a vehicle. As such, Defendants move to exclude any evidence or argument as to Herbst's proposed alternative design.

Plaintiff maintains that the LPLA standard does not require this. See Louisiana Revised Statute 9:2800.6. Plaintiff relies on *Garcia v. Brown*, 889 So.2d 359, 361 (La. App. 2 Cir. 11/24/04) where the court found that compliance with FMVSS standards does not excuse a manufacturer's duty under Louisiana law. Plaintiff argues that not establishing compliance with FMVSS 301-R is not a justification for excluding evidence that an alternative design existed. Plaintiff remarks that Herbst produced a simple and inexpensive enhancement of the structural strength of the rear end of the subject Hyundai by employing industry recognized standards and methods which are employed by vehicle manufacturers.

The Court finds that it is not necessary that Plaintiff establish that her alternative design complies with FMVSS. The Louisiana Products Liability Act requires that a Plaintiff prove that an alternative design existed at the time the product left the manufacturer's control which was capable of preventing plaintiff's injury, and that the likelihood and gravity of plaintiff's injuries outweighed the burden and cost to the manufacturer. Louisiana Revised Statute 9:2800.56.

---

[28] Defendants' exhibit 2, pp. 14-16, referencing 49 C.F.R. 571.301.
[29] *Id,* pp. 8+9; Defendants' exhibit 4, Herbst deposition, p. 53:13-24.

## CONCLUSION

For the reasons explained herein,

**IT IS ORDERED** that Hyundai Motor Company and Hyundai Motor America's Motion in Limine to Exclude Evidence on Experts Herbst and Kennett's Rear Impact Testing and Alternative Design (Doc. 65) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 12th day of December, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**